Cleveland and others vs. Burnham, imp.

CLEVELAND and others, Appellants, vs. BURNHAM, imp., Respondent.

*October 16 — November 3, 1885.*

*(1) Appeal to S. C.: Inferences from findings. (2) Mistake in Christian name how proved and corrected. (3-5) Banks and banking: Liability of stockholder for debts: Transfer of stock on books: Evidence of transfer when books lost: Presumptions. (6) Interest. (7) Costs.*

1. When all the facts essential to constitute a mistake are found by the trial court, this court may draw therefrom the inference that there was a mistake, although the evidence is not before it and the trial court did not specifically so find.

2. A mistake in the Christian name of a grantee or person to whom any instrument is made, may be proved by parol and corrected in any action legal or equitable.

3. To render a purchaser of stock in a bank liable to the amount of his shares for the debts of the corporation (under ch. 71, R. S. 1858), a formal transfer of such shares to him upon the books of the bank must be shown.

4. *It seems* that if the books of the bank are lost or destroyed any record or document in connection with or having reference to such transfer, and contemporaneous therewith, would be higher evidence of the entry thereof in such books than mere parol testimony.

5. Thus, in such a case, the certificate of stock issued to the transferee, or the copy of the list of shareholders filed (under sec. 31, ch. 479, Laws of 1852) with the register of deeds, would be *prima facie* evidence of the entry of the transfer upon the books. The presumptions are that the statute requiring such entry before the issue of a new certificate, was complied with, that the usual course of business was followed, and that everything was done which was essential to vest the title in the purchaser who is in possession of the stock certificate.

6. The liability of the stockholder to the amount of his shares becomes fixed at the date of the judgment by which it is ascertained that the assets of the bank have been exhausted and that the deficiency exceeds the amount of his stock, and from that date he is liable also for interest on that amount.

7. A judgment fixing the amount of the claims of creditors of a bank, applying the assets in part payment thereof, and adjudging the stockholders liable to the amount of their stock respectively, was vacated as against a stockholder who had failed to answer, and he was let in to defend. In a judgment subsequently rendered against him he was charged with the costs only from the time of serving his answer. *Held*, not error.

APPEAL from the County Court of *Milwaukee* County. The action was commenced in 1862 against the Marine Bank of Milwaukee as an insolvent corporation, and the other defendants as its stockholders, to enforce their liability under the statute. The reports of former appeals in the course of the litigation will be found in 14 Wis. 705; 17 id. 545; 18 id. 490; 55 id. 387, 598; and 60 id. 16.

On April 27, 1869, it was adjudged that the defendant bank had surrendered its corporate rights and franchise and that it be dissolved.

On November 21, 1881, judgment was entered, adjudging the amount of the indebtedness to the several plaintiffs, applying the assets of the bank to the extent thereof in the satisfaction of such indebtedness, and further adjudging the several defendants, including the defendant *Burnham*, liable to the plaintiffs in the amounts of the stock of the bank held by them respectively. After the decision in 55 Wis.

598, the judgment was vacated as to the defendant *Burnham*, against whom it had been taken by default, and he was allowed to answer.

The amended complaint alleged that *Burnham* was a stockholder at the time of the accruing of the indebtedness to the several plaintiffs, and also at the time of the commencement of the action, in the amount of $5,000. The answer of *Burnham* was served April 24, 1883, and denies, among other things, that he was the owner of stock to the amount of $5,000.

The findings of fact and the conclusion of law as to the ownership of stock by *Burnham* are stated in the opinion. The court also found as conclusions of law that *Burnham* was liable to the plaintiffs in the sum of $3,000, with interest from the date of the trial, February 18, 1885, and that he cannot be charged with interest prior to that date; that he was to be charged with the costs which had been incurred by the plaintiffs against him in the action subsequent to the service of his answer and no more.

From the judgment entered accordingly the plaintiffs appealed.

For the appellants there was a brief by *E. Mariner* and *Geo. H. Noyes*, and oral argument by *Mr. Noyes*. They argued, among other things, that the court should have ordered judgment against the defendant for interest on the stock held by him, from the commencement of the suit, or from the date of the judgment in the action, or at least from the time when issue was joined by the answer of *Burnham*, on April 24, 1883. *Burr v. Wilcox*, 22 N. Y. 557; *Handy v. Draper*, 89 id. 334; *Shellington v. Howland*, 53 id. 371; *Wheeler v. Millar*, 90 id. 362–3. Costs should have been allowed from the commencement of the suit to the extent to which they were incurred by the plaintiffs in the proceeding to declare a final judgment against *Burn-*

*ham.* See *Crease v. Babcock,* 10 Met. 525, 568; *Coleman v. White,* 14 Wis. 703.

*Winfield Smith,* for the respondent, contended, *inter alia,* that without a transfer to the defendant on the books of the bank, he cannot be treated as a stockholder in this action. *Rosevelt v. Brown,* 11 N. Y. 152–3; *Cady v. Potter,* 55 Barb. 463; *Ex parte Hall,* 1 Macn. & G. 307; *Mann v. Currie,* 2 Barb. 299; *U. S. v. Cutts,* 1 Sumner, 133, 139; *Bruce v. Smith,* 44 Ind. 5; *Hoare's Case,* 2 Johns. & Hem. 229; *Upton v. Burnham,* 3 Biss. 431; *Johnson v. Laflin,* 5 Dillon, 78–83, 90; *Helm v. Swiggett,* 12 Ind. 194; *Marlborough Co. v. Smith,* 2 Conn. 579; *Humble v. Langston,* 7 Mees. & W. 517; *Shellington v. Howland,* 53 N. Y. 371, 376; *Bosanquet v. Shortridge,* 4 Exch. 699; *Ward's Case,* L. R. 2 Ch. App. Cas. 431; *Head's Case,* L. R. 3 Eq. 84; *White's Case,* id. 86; *Bugg's Case,* 2 Drewry & Sm. 452; Bouvier's Law Dict. tit. STOCKS; *Union Bank v. Laird,* 2 Wheat. 393; *Black v. Zacharie,* 3 How. 483; *Kellogg v. Stockwell,* 75 Ill. 68; *Bank of America v. McNeil,* 10 Bush, 54; *Conant v. Seneca Bank,* 1 Ohio St. 298; *U. S. v. Vaughan,* 3 Binn. 394; *Beckwith v. Burrough,* 13 R. I. 294. Interest should not be allowed beyond the date of the decision of this issue. The judgment should in no case exceed the total amount of the defendant's stock. The interest in favor of the original creditors is a part of the debt, and must be restricted by the same limitations which control the collection of the principal. *Crease v. Babcock,* 10 Met. 525, 568; *Cole v. Butler,* 43 Me. 401, 405; *Sackett's Harbor Bank v. Blake,* 3 Rich. Eq. 225, 233; Thompson's Liability of Stockholders, sec. 364, note 3. There was no error in the ruling as to costs. The suit is naturally divided into two parts, (1) that in which the plaintiffs establish their claims against the bank and obtain judgment for principal, interest, and costs; and (2) that in which the liability of the stockholders is fixed. The costs

charged against the bank are not chargeable to *Burnham* as personal costs, but as part of the bank debt. He should at most pay the costs of the issue he has made. It appears by the record that, besides the costs awarded by the court against *Burnham*, he paid at the time of answering all the costs previously accrued against him. The court could not compel him to pay them a second time.

ORTON, J. On the 21st day of November, 1881, a judgment was entered in the above-entitled action in favor of the plaintiffs severally, for the sums of $18,060.59, $17,509.40, and $28,637.80, against the defendant the Marine Bank of Milwaukee. At that time all the assets of said bank had been collected by a receiver and converted into money, and the net proceeds thereof amounted only to the sum of $4,337.25, which by said judgment was applied in part payment thereof, and of the said claims of the plaintiffs, proportionably, leaving a large deficiency in their favor against the bank and over and above the total amount of the stock held therein by the stockholders thereof. In this branch of the case against the defendant *Jonathan L. Burnham* there was no contest as to the fact that he was the owner of at least $3,000 of stock in said bank, and there was no question but that he was liable to the plaintiffs for such amount. The main contention was that he was not the owner of certain other $2,000 of said stock, and liable therefor, as charged in the complaint. In respect to this stock the county court found, as facts, that the said *Burnham* agreed to purchase of Silkman & Field $2,000 of stock owned by them, and paid therefor in brick, which was used in a building they were constructing; that Silkman & Field and said *Burnham* went to the bank in order to transfer said $2,000 stock to said *Burnham*, and thereupon the said Silkman & Field delivered their certificate for said $2,000 stock to said bank, which executed a certificate for $2,000 of its stock

and delivered it to said *Jonathan Burnham*. Said certificate was in the usual form of the stock certificates of said bank, and in the space left therein for the stockholder's name the said bank inserted the name of *George* Burnham and delivered it to *Jonathan L. Burnham*, who expected at the time that his own name would be inserted therein, and took the certificate away, and has ever since retained it, and did not discover that it was so made out in the name of *George* Burnham until after the judgment was entered in this case on November 21, 1881; that said George Burnham never purchased or paid for said $2,000 of stock, or any stock in said bank; never held or knew of said certificate, or made any claim on the same or the shares of stock represented thereby; that said defendant *Jonathan L. Burnham* never sold or transferred the stock so agreed to be purchased as aforesaid by him of Silkman & Field, but held the same right and title, if any, to the same at the commencement of this action as at the time of receiving said certificate of $2,000. It does not appear that the defendant ·*Burnham* ever drew any dividend upon said stock, nor that any dividend was ever paid to any stockholder of said bank, nor does it appear that he performed any act of ownership beyond what appears above, save that he attended a stockholders' meeting and voted on some stock, but whether he ever voted upon any stock beyond the said $3,000 does not appear.

It was further found that on the 5th day of July, 1859, there was filed in the office of the register of deeds of Milwaukee county, a statement signed and verified by the oaths of the then president and cashier of said bank, purporting to give a true and correct list of the names and residences of the shareholders in said bank, and the number of shares and amount of stock owned by each on the 1st day of July, 1859. The said statement is as follows, to wit: "The following is a statement of the names of the shareholders of the Marine

Bank of Milwaukee, together with the residence and number of shares owned by each stockholder on the first Monday of July, 1859, a banking association organized under an act of the legislature of the state of Wisconsin, entitled 'An act to authorize the business of banking,' approved April 9, 1852, and made in pursuance of the thirty-first section of said act," which said statement recited, among others, the name of *Jonathan L. Burnham* as a shareholder in the amount of $5,000, and in which neither the names of George Burnham nor those of Silkman & Field appear, and was the last statement filed in said register's office by or on behalf of said defendant bank, and *Jonathan L. Burnham* never had any other stock than such $3,000, and $2,000 agreed to be purchased from said Silkman & Field. The stock and transfer and other books of said bank, and the records thereof, have been lost, and the same could not be produced upon the trial of this action, and it does not further appear what entry, if any, of such transfer by Silkman & Field was made upon the books of such bank.

The conclusion of law upon these facts is " that *Jonathan L. Burnham* is not the holder of the stock in said bank represented by said certificate so made out in the name of George Burnham, which he, the said *Jonathan*, received, and is not liable in this action as the holder thereof." This conclusion of law is preceded by the conclusion of fact "that the attempted transfer of said $2,000 stock by said Silkman & Field was not completed, and did not transfer the title thereto to the defendant *Jonathan L. Burnham.*" The evidence is not reported, and the case is to be heard and disposed of upon the above findings of fact alone.

A preliminary question is raised by the learned counsel of the respondent, whether any inferences or conclusions can be drawn by this court from said facts beyond what are expressed in and by the facts themselves. If this court cannot be allowed to draw any reasonable inferences and log-

ical conclusions which the facts found by the county court may warrant, then it has really nothing to do with the case, and the conclusions of both law and fact made and filed by the county court are conclusive. We had supposed that the object of an appeal to this court, in such a case, was to obtain a reversal of the conclusions of law drawn by the court below from the facts, whether such facts appeared merely from the evidence, or by the findings of the court. The county court found a conclusion of fact, from the facts stated, "that the attempted transfer of said $2,000 of stock was not completed, and did not transfer the title thereto to the defendant *Jonathan L. Burnham*, and that he is not the holder of the stock," etc. This conclusion is what the appellant seeks to reverse, and it presents the only important question arising from the facts found, to be decided by this court. The contention that this court cannot draw its own inferences and conclusions from the facts on such an appeal is too technical to be even specious or plausible.

The learned counsel further contends that the facts cannot be considered as proof that the stock certificate issued by the bank in the name of George Burnham instead of *Jonathan L. Burnham* was so made by *mistake*, and that such mistake cannot be corrected in such an action so as to make said certificate any evidence of the title of *Jonathan L. Burnham* to said stock. There is no principle better settled than that when a grant or any instrument is made to a person by a wrong *Christian* name, either by mistake or fraud, it may be proved by parol and corrected in any action, legal or equitable. In *McMahon v. McGraw*, 26 Wis. 614, in an action of ejectment, the legal title was held by a tax deed taken by and in the name of the defendant. The plaintiff was allowed to prove, without pleading it, that the defendant took the title when agent for the plaintiff, and in violation of his trust, and that, therefore, it inured to the benefit of the plaintiff. In *Staak v. Sigelkow*

12 Wis. 234, it was shown, in a suit for the title and possession, that a certain deed was executed by mistake to *Louis*, instead of the correct Christian name, *Arnold*, Staak, by proof that he was the purchaser. In that case the learned counsel of the appellant therein, Messrs. Smith & Solomon, cited many cases where such a mistake might be corrected in the same action involving the title, and Chief Justice Dixon, in his opinion, examined the question very fully, and cites numerous cases at law as well as in equity where such a mistake was allowed to be corrected by parol evidence, and in illustration of the maxims *ambiguitas verborum latens verificatione suppletur*, and *nil facit error nominis cum de persona constat*, he cites cases all along back to *Counden v. Clerke*, Hob. 32; Bac. Max. 23; *Altham's Case*, 8 Rep. 155; Brooke's Abr. Confirmacion, 30; Id. Nosme, 9; and Coke *super* Litt. 3.

In *Bancroft v. Grover*, 23 Wis. 463, a note wrongly described in an award of arbitrators as having been given to the wrong person was allowed to be corrected by parol evidence. In *Begg v. Begg*, 56 Wis. 534, in an action of ejectment, parol evidence was held admissible to show whether the grant was intended to be made to James Begg, Jr., or James Begg, Sr. *In the Goods of Brake*, 32 Eng. Rep. 601, parol evidence was allowed to prove whether *William* McC. or *Thomas* McC. was intended as the executor by the testator in his will. In *Hawkins v. Garland*, 76 Va. 149, 44 Am. Rep. 158, a bequest made to S. G., son of Capt. J. F. S., was intended to be made to S. G., son of Capt. J. F. H., and it was allowed to be shown by parol evidence; and so, in *Careless v. Careless*, 1 Mer. 384, where the bequest was made to the testator's nephew Robert, the son of *Joseph* C., it was allowed to be shown that his nephew Robert, the son of *Thomas* C., was intended, and that Joseph was written instead of Thomas "by the slip of the pen." *Beaumont v. Fell*, 2 P. Wms. 141, was one of the first cases in which

parol evidence was admitted in aid of construction, and in it the doctrine is laid down that whenever the testimony raised an ambiguity, evidence *dehors* the instrument should be received to show what the words used really and in fact meant. See, also, *Maund's Adm'r v. McPhail*, 10 Leigh, 199; *Hiscocks v. Hiscocks*, 5 Mees. & W. 363. There is no difference between the application of this principle to wills and to contracts. 1 Greenl. Ev. § 287. Such mistakes are classed as *latent* ambiguities, to be explained by parol. 1 Greenl. Ev. § 297.

In reason, why should not such a mistake be corrected or explained in any action by parol evidence? Where no rights have grown up under it, and the party whose name is wrongly inserted claims nothing by it, and never had any interest in the subject matter, and there are no innocent parties to suffer by the correction, why should not the insertion of the wrong Christian name in such a document be treated as a mere clerical error, and have effect as corrected, or the error be disregarded? Where any claim is made by the person whose name is so inserted, and any vested interests are to be disturbed, and there is any doubt about the mistake, then it would be proper to file a bill in equity to make the correction, and make the parties interested, parties.

In this case the stock was bought and paid for by *Jonathan L. Burnham*, and he went to the bank with those from whom he purchased it, to have it transferred upon the books to him, and by a mere clerical error of a clerk in the bank the name of *George* was inserted as *his* Christian name, and the certificate is delivered to him and has been kept by him as the owner of it for a great many years, and no other person has ever set up any claim to it, and the statement of the bank officers filed with the register of deeds shows that the stock represented by it stands in his name on the records of the bank. The stock certificate was issued and delivered to

him by the name of George Burnham, perhaps under the mistaken belief of the clerk that such was his true name. The facts found, without further repetition, show a clear and unquestionable case of a mistake in the Christian name of *Jonathan L. Burnham* in the stock certificate introduced in evidence, by the use of the name of " George " instead of " Jonathan," and the evidence is beyond all question that the certificate is his; and with such clear evidence of the mistake it should have effect as evidence of his title to the $2,000 of stock. It is true that the county court failed to find that there was any *mistake* in such name, and it is insisted that this court can go no further than the findings. But where the county court found all of the essential facts to constitute this mistake, we shall not hesitate to name it, and give it its true legal character and effect.

So far, then, there are established the two important facts, so far as the action of the bank is concerned, that Silkman & Field surrendered and delivered to the bank their certificate for this $2,000 of stock, and the bank issued to the defendant *Jonathan L. Burnham* a certificate of the same. The statement of facts does not directly show what entry or entries, if any, were made of the transfer of this $2,000 of stock on the books of the bank. The books are lost, and of course cannot be consulted. After so long a time it would be scarcely possible for any person who made such entry, or saw the same on the books, to now testify to the same from mere recollection. Such testimony, if given, would be of the most suspicious and unreliable character. In view of the authorities we think it safer to hold that such transfer on the books of the bank should be shown. What would be the best or primary evidence of such transfer is lost, and resort must be had to secondary evidence of the highest class to prove such fact. Such secondary evidence is of the highest class when it does not appear that there is any better secondary evidence available. 1 Greenl. Ev.

§ 84. The testimony of a witness that he could recollect so long afterwards that he made or saw such entry on the books of the bank would be the weakest kind of oral evidence, and yet it would be proving the contents of the bank book or record, and as a general rule such evidence is the best next to the production of the books themselves. But the circumstances, as we have seen, may make such evidence very uncertain and unsatisfactory, if not from lapse of time impossible. In order to render such evidence indispensable, it must appear that it is attainable; that some person may be found who recollects making or seeing such entry on the books, and such fact does not appear in this case.

But there is in the case documentary evidence which is higher than *oral* testimony, tending to show that such transfer was made on the books of the bank. The stock certificate of Silkman & Field was evidently surrendered and canceled for the purpose of having such transfer properly made on the books, and a new stock certificate therefor was duly issued to *Jonathan L. Burnham*, who had purchased the stock from Silkman & Field. This is documentary evidence tending strongly to show that the transfer had been lawfully consummated. This is a regular and an official document of the bank, and is at least *prima facie* evidence of the title of said *Jonathan L. Burnham* to this stock.

By the thirty-first section of the banking law of 1852 [ch. 479, Laws of 1852] it is provided that "the president and cashier of every association formed pursuant to the provisions of this act shall at all times keep a true and correct list of the names of all the shareholders of such association, and shall file a copy of such list in the office of the register of deeds of the county where any office of such association may be located, and also in the office of the bank comptroller on the first Monday of January and July in each year." The copy of the statement or list so required to be kept, which was verified by the oaths of the president and

cashier, and filed with the register of deeds of Milwaukee county on the 5th day of July, 1859, showing the names of the shareholders of said bank, and the amount of stock owned by each on the first day of July, 1859, was introduced in evidence. This was also an official document of the officers of said bank. It showed that *Jonathan L. Burnham* was the owner at that time of $5,000 of stock in said bank. In connection with this document it was shown that said *Burnham* never had been the owner of any of the stock of said bank except his original subscription of $3,000 and the $2,000 so purchased from Silkman & Field, and their names did not appear upon said list as the owners of any shares of said stock. This would seem to show, *prima facie* at least, that the transfer of said stock appeared upon the books of the bank in some form of record.

By the banking law stock was made transferable on the books of the association "in such manner as may be agreed on in the articles of association." It may be that no special manner of such transfer was ever agreed on in the articles of association, or that the surrender and cancellation of the stock of the original owner, and the issuing of a new stock certificate to the purchaser or transferee, and the entry upon the list of shareholders of said stock in the name of such purchaser, was the manner of transfer on the books so agreed upon. But be that as it may, the said documents, in connection with the parol evidence, certainly constituted the best evidence of such transfer upon the books which was available to the plaintiffs in this case, and was much better and higher evidence than simply the parol evidence of any person swearing to his recollection, after so long a time, of the entry having been made, or of the contents of the books in respect to such entry. 1 Greenl. Ev. § 88, and cases cited in note. When the record books are destroyed or lost, then it would seem, if there existed any record or document in connection with or having reference to such

transfer, and contemporaneous therewith, it would afford higher evidence of the entry thereof in such books than mere parol testimony. *Hilts v. Colvin*, 14 Johns. 182; *Battles v. Holley*, 6 Greenl. 145; *Cook v. Wood*, 1 McCord, 139; *Lyons v. Gregory*, 3 Hen. & M. 237; *Lowry v. Cady*, 4 Vt. 504; *Doe v. Greenlee*, 3 Hawks, 281; *Collins v. Maule*, 8 Car. & P. 502; *Everingham v. Roundell*, 2 Moody & R. 138; *Harvey v. Thomas*, 10 Watts, 63; 1 Greenl. Ev. § 85, and notes; Gilb. Ev. 5. The rule in such a case is also that a certified copy or transcript, required to be kept, may supply the record. We think it within the rule that these documents, which so closely relate and have reference to the transfer on the books of the bank, in a proper manner, of this stock, are at least *prima facie* evidence of such transfer. But, in addition to this, there are certain presumptions which arise in such a case: (1) That the requisites of the statute requiring an entry on the books of transfers of stock have been complied with before issuing the new certificate and entering the name of the transferee as the owner upon the list of shareholders with the amount of such stock. 1 Greenl. Ev. § 38. (2) That such entry was made because in the usual course of business of the bank. *Ibid.; Boorman v. Am. Exp. Co.* 21 Wis. 152. (3) The possession of the stock certificate, and the purchase of the stock and payment of the consideration, are presumptive evidence of his full title thereto, and that everything had been done which the law required to be done to transfer the same. 1 Greenl. Ev. § 46, and numerous cases cited.

Without pursuing this question further, we conclude that there was *prima facie* evidence that said stock was duly transferred on the books of the bank to *Jonathan L. Burnham*, and that he is the owner and holder thereof.

The learned counsel of the respondent contends that there can be no interest allowed in the judgment beyond the amount of the defendant's stock of $5,000 or $3,000, as the

case may be. That question has been determined in respect to the penalty of a bond, in an action against sureties which involved the same principle, by this court in *Clark v. Wilkinson*, 59 Wis. 543, and it was held that "the authorities in this country establish the doctrine that when the damages resulting from the breaches of the bond exceed the penalty, interest on the. amount of the penalty may be recovered from the time of the breach in excess of the penalty." This was so determined upon general principles of law. The time from which interest should be computed in such a case has not before been determined by this court. In the above case it is stated, in the opinion of Mr. Justice TAYLOR, that it had been decided in New York that interest may be recovered from the date of the breach of the bond, if the damages then exceed the penalty. The case referred to is *Brainard v. Jones*, 18 N. Y. 35. In that case interest was so allowed by authority, and upon the general principle "that such is what the law exacts of a person for his unjust delay in payment after his liability is ascertained and the debt is actually due from him." That would seem to be the correct rule, and as the question is one of conflicting authority, we choose to concur with the courts of New York upon it. This seems to be also in consonance with our statute, and the general rule adopted by this court in cases where no interest is stipulated in the contract beyond maturity, that interest should be computed upon any such debt from the time it becomes due. *Mills v. Jefferson*, 20 Wis. 50. In accordance with that principle the liability of the defendant as a stockholder to the plaintiffs became fixed and certain, and his indebtedness to them became liquidated and due, from the date of the judgment by which it was ascertained that the assets and property of the bank had been exhausted and the indebtedness of the plaintiffs or the balance of the judgment exceeded the amount of the defendant's stock. From the date of said judgment the defendant

was liable to pay at once to the plaintiffs or into court an amount equal to his said stock of $5,000. That date appears to be November 21, 1881.

The costs allowed in the court below seem to be according to the better rule, and we are not disposed to disturb the same.

This disposes of the questions in controversy on this appeal. I regret that this opinion is so long, but the questions are important, and it was desirable that their decision should be right and supported by reason and authority.

*By the Court.*— The judgment of the county court is reversed, and the cause remanded with directions to render judgment in accordance with this opinion.