MEYER v. SHAPTON.

1. FRAUDS, STATUTE OF—CONTRACTS—MEMORANDUM.

While a memorandum of the purchase and sale of a motor truck signed only by the buyer would not constitute a contract of sale, the payment of a part of the purchase price at the time of signing satisfies the statute of frauds.

2. APPEAL AND ERROR—FINDINGS OF FACT—TRIAL.

On error, findings of fact made by the lower court sitting without a jury are taken as correct, if there is any testimony in the case to support them.

3. SALES—PARTNERSHIP—NAMES.

Where defendants in an action for breach of a contract of sale of a motor truck claimed that the contract was made with plaintiff under a fictitious name, Meyer Bros., and it was shown that no such firm existed, that some time previously plaintiff had been connected with a firm or partnership of Meyer Bros., which had ceased to exist, and in taking a written order or memorandum of the deal, plaintiff had used a blank order of the old firm and omitted to erase the name, that he was not doing business or advertising under the name of Meyer Bros., the trial court was right in holding that a valid contract of purchase from plaintiff existed.

4. SAME—EVIDENCE—MEMORANDUM.

Oral proof was also admissible to show who were the real parties to the sale, which was not evidenced by a written contract; and the apparent error was a latent ambiguity, subject to oral explanation, but if the contract had been reduced to writing and signed by purchaser and seller, oral proof of previous negotiations would have been incompetent.

5. SAME—CONTRACTS.

Parol evidence may be introduced to correct, identify or explain the name given and party intended in a written instrument, as grantee, devisee, or promisee, not to pervert the written instrument, but to prevent the written instrument from being perverted from the intent of the parties.

6. SAME—EXECUTORY CONTRACT.

   The transaction being an executory agreement of sale, was
not invalid because plaintiff did not own the motor truck
negotiated for, but was obliged to order it.

Error to Charlevoix; Mayne, J. Submitted November 13, 1913. (Docket No. 103.) Decided January 5, 1914.

Assumpsit by Herman C. Meyer against William Shapton and Earl J. Shapton for breach of a contract of sale. Judgment for plaintiff. Defendants bring error. Affirmed.

*Halstead & Halstead,* for appellants.

*Harris & Reugsegger,* for appellee.

STEERE, C. J. This is an action brought by plaintiff to recover from defendants damages for breach of an alleged contract by which they purchased from him an automobile delivery wagon. It was begun and first tried in justice's court, and an appeal was taken, from a judgment there rendered, to the circuit court of Charlevoix county, where the case was retried before the court without a jury. On demand therefor, special findings of fact, together with conclusions of law thereon, were made and filed by the court. These sufficiently state the case for an understanding of the controversy and are as follows:

"(1) On or about June 1, 1912, the plaintiff, a resident of Boyne Falls, Mich., met the defendants at the city of Charlevoix, Mich., and the parties conferred with reference to the selling by the plaintiff to the defendants of a certain type of automobile, known as a delivery wagon, and the parties agreed upon the price and terms, and, while sitting in the machine in the street in the city of Charlevoix, the defendants paid and the plaintiff accepted $10 in part payment of the machine, which was to be by the plaintiff ordered from the factory and delivered as soon as de-

livery could be had from the factory. The defendants were to pay $1,020 for the machine; $10 down, $90 cash June 3, 1912, $400 on delivery of the car, and $520 in the defendants' notes divided in payments of three months, with interest at 6 per cent. The defendants paid the plaintiff at that time $10 and on June 3d paid to R. A. Emrey $75 on the purchase price.

"(2) At the time of making the agreement, the plaintiff took from his pocket a blank order formerly used by Meyer Bros., now out of business, which was in the following form:

" 'MEYER BROS. HARDWARE, FURNITURE AND IMPLEMENTS.
" 'Boyne Falls, Mich., .............., 190..
" 'The undersigned hereby purchases of you to be delivered at Boyne Falls, Mich., .........., 190.., the following described articles: .............
" 'Upon receipt of the above-named articles, the undersigned agrees to pay $........ cash, or execute and deliver to you approved note, as follows: .............. Notes to draw interest at the rate of 7 per cent. per annum.'

"(3) Upon this printed form the plaintiff then and there filled out an order for the machine with lead pencil and when filled out the paper then read as follows (lead pencil writing underscored):

" 'MEYER BROS. HARDWARE, FURNITURE AND IMPLEMENTS.
" 'Boyne Falls, Mich., *June 7, 1912.*
" 'The undersigned hereby purchases of you to be delivered at Boyne Falls, Mich., *as soon as possible* the following described articles: *1—No. 59—Delivery wagon complete with top—tires 33x4—also speedometer.* Telephone 209—1 long 3 short.
" 'Upon receipt of the above-named articles, the undersigned agrees to pay *$1020*, or execute and deliver to you approved note, as follows: *$10.00—$90 cash June 3, 1912—$400.00 on delivery of car—$520.00 on notes divided in payments of 3 months—with interest at 6 per cent.* Notes to draw interest at the rate of 6 per cent. per annum.
[Signed] " 'WM. SHAPTON.
" 'EARL J. SHAPTON.'

"(4) Plaintiff negligently omitted to erase the name 'Meyer Bros.'

"(5) The memorandum of defendants' telephone

address was written across the face of the order, as appears above.

"(6) The above memorandum was signed by the defendants and by them delivered to the plaintiff.

"(7) At the time of the signing and delivery of the memorandum and the payment of the money, there was no such firm in existence known as 'Meyer Bros.' and had not been for four years preceding. Plaintiff was doing business in his own name. No reference was made to the firm of Meyer Bros. The name of Meyer Bros. was not erased, by mistake.

"(8) The defendants on or about the 5th day of June called the plaintiff over the phone and notified the plaintiff that they wanted to cancel the order, and plaintiff informed the defendants then and there that the machine had been ordered from the factory and that he could not cancel the order for it, and that he would expect them to take the machine.

"(9) On or about the 18th day of June following the plaintiff tendered to the defendants the kind and style of machine or delivery wagon ordered by them on the 1st day of June, and they refused to accept it and made no objection and gave no reasons for not accepting only that they did not want it and would have nothing to do with it.

"(10) Afterwards the plaintiff sold the machine to another party, receiving $800 therefor. His expenses in and about the making of the sale were $50. He had received from the defendants $85.

"(11) I find and conclude as a matter of law that the defendants entered into an agreement with the plaintiff to purchase from him a delivery wagon; that the plaintiff agreed then and there to sell a delivery wagon and tendered delivery of the wagon under the agreement, and that the wagon was refused, and that the plaintiff was thereby damaged by reason of the sale of the wagon in the sum of $220, and that he had received from the defendants on the purchase price of the machine $85, and that there is still due the plaintiff the sum of $185, which amount he is entitled to recover from the defendants.

"(12) Further that the omission to erase the name 'Meyer Bros.' did not render the contract void."

Judgment was duly rendered and recorded in ac-

cordance with said findings. Various amendments
proposed in behalf of the defense, both to the findings
of fact and conclusions of law, were denied.

The principal points raised in defendants' numer-
ous assignments of error against these findings and
sequential judgment are: There was no testimony
to support the findings that plaintiff accepted the
order and agreed, orally or in writing, to sell the car,
or that "the name of Meyer Bros. was not erased
(from the order), by mistake." The court errone-
ously admitted, against objection, plaintiff's testi-
mony that he was doing business in his own name, and
in the negotiations Meyer Bros. was not mentioned
by either party, there being no such firm in existence,
and in further allowing him to detail the circum-
stances and reasons for using such blank. That the
order written upon said blank was no evidence of a
valid contract and was erroneously admitted in evi-
dence, because it was at most a mere offer to pur-
chase, not signed by plaintiff nor naming him, and
showed upon its face that the business, if done by
and with him, was done under an assumed or fictitious
name, in violation of Act No. 101, Pub. Acts 1907 (2
How. Stat. [2d Ed.] § 2626).

"The alleged contract was for the purchase of
goods, wares, and merchandise for the price of more
than $50, and, not being accepted in writing by the
vendor, lacked mutuality and was void under the
statute of frauds.

"The partial payments were of no legal efficacy in
making a valid contract, for the reason that there
never was any agreement, oral or otherwise, on the
part of the plaintiff to sell, and consequently nothing
upon which a part payment could operate."

Counsel for defendants say in their brief—

"The court further found and held that the paper
known as Exhibit 1 created a binding obligation upon
defendants."

We are impressed that this is a misapprehension upon which many of defendants' contentions are based. The court, as we read and construe the findings, did not so determine, but found that there was an oral agreement entered into between the parties on June 1, 1912, for the sale and purchase of the car in question, on terms talked over and agreed upon; that, in connection with and at the time of making the agreement, the writing in question was made out by plaintiff, signed by defendants, and handed by them back to him; that it is shown to contain the terms on which the sale was made and is competent evidence as a memorandum to be considered in the case in connection with the oral testimony; that the evidence, taken in its entirety, shows a contract of sale and purchase as claimed by plaintiff, upon which earnest money was then and there paid, the transaction as a whole constituting a valid and binding agreement.

The writing, standing alone, unsigned and unaccepted by plaintiff, would not constitute a contract. The contract of sale did not depend upon the memorandum to relieve it from the statute of frauds. Section 9516, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11400), provides:

"No contract for the sale of any goods, wares or merchandise, for the price of $50 or more, shall be valid, unless the purchaser shall accept and receive part of the goods sold, or shall give something in earnest, to bind the bargain or in part payment, or unless some note or memorandum in writing of the bargain be made, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

No testimony was offered or introduced by defendants.

It has often been held that the findings of fact made by the court on trial without a jury will be taken as

true if there is any testimony in the case to support them.

As to defendants' claim there was no testimony to support the findings that plaintiff accepted the order and agreed to sell the car and that the name of Meyer Bros. was by mistake not erased, we find in the record that plaintiff testified he had been engaged in general merchandising in his own name for the last four years and was in the business of selling these machines; that William Shapton knew he dealt in them, and they together on June 1, 1912, examined one belonging to a Mr. Hall, with the same chassis as the one ordered for defendants except the tires of the latter were larger; that "the deal was about an Overland delivery wagon," and "at that time we came to an agreement, and a memorandum of the agreement was made in writing," signed by defendants in the presence of himself and Mr. Hall, and "the paper (Exhibit 1) shows the price of the machine and the terms I was to give him as we agreed;" also that plaintiff was selling the machine to defendants in his own name and the name of Meyer Bros. was not mentioned; that $10 was then paid him by defendants upon the machine to "apply on the purchase price," and later $75 was paid him by defendants through a Mr. Emrey "to apply on the contract;" that he at once ordered the car by telephone and confirmed it by letter dated and mailed June 1st, the same date as Exhibit 1. Being asked how he came to use that blank, he said it was practically the only piece of paper he had with him; that it was written out on the street; that there had been such a firm as Meyer Bros. some four years back, but at this time there was no such firm; that he was not connected with or agent of any such firm and had not been advertising business in such name and did not know of any one else who had; that, when Shapton called him up on June 5th

to countermand the sale, he called for him by his own name of Herman C. Meyer.

In the light of such undisputed testimony it cannot be said there was no evidence to support the findings. We think the oral evidence of the agreement as made, and in explanation of the circumstances, showing who the real parties were and that the actual seller of the car did not appear by the memorandum, was competent.

Treating this as an oral contract, as it primarily was, and it being shown that in fact plaintiff did not conduct or transact the business under an assumed name, Act No. 101, Pub. Acts 1907 (2 How. Stat. [2d Ed.] § 2626), has no application.

If the contract of sale depended upon and was created by the mutual adoption of a valid written agreement between the parties, it would be a contract in writing, precluding as a rule oral proof of negotiations leading up to it; but, if originally created and consummated without writing, it remained a verbal contract, though in connection with it or following it a written memorandum was made, which then became written, but not exclusive, evidence of the verbal contract. The parties could, of course, put an end to the verbal agreement by a completed written contract formally and understandingly entered into in its stead, but such was not the case here. In this case the oral testimony does not attempt to dispute the written memorandum as to price, description of property, or terms of delivery and payment. It is directed only to an error in designation of the seller, to a showing by extrinsic evidence that the "you" in Exhibit 1 was intended for and meant plaintiff, whose surname was Meyer, and did not nor could not mean Meyer Bros., as printed in the old blank of a firm or party which had been out of existence for four years, one of that class of mistakes in a writing sometimes

designated *latent ambiguities* and open to oral explanation.

It is a general rule that parol evidence may be admitted to correct, identify, or explain the name given and party intended in a writing as grantee, devisee, or promisee, not to pervert the written instrument, but to prevent the written instrument being perverted from the true intent of the contracting parties. *Cleveland* v. *Burnham*, 64 Wis. 347 (25 N. W. 407) ; 17 Cyc. p. 712, and cases there cited. Even under this rule the parol evidence was admissible.

That a valid, verbal, executory contract of sale of personal property can be entered into between parties capable of contracting where its terms are mutually understood and agreed upon and earnest money is paid in case the purchase price exceeds $50 is not open to question.

The contention that the sale was not binding because at the time alleged plaintiff did not own the chattel negotiated for is not tenable. Technically considered, the transaction is not a bargain and sale but an executory agreement of sale. Under the general rule in such cases, even the nonexistence of the thing contracted for, at the time of an executory contract of sale, does not invalidate it. It becomes the duty of the vendor to produce or acquire it. Tiedeman on Sales, § 56; Benjamin on Sales, p. 113; *Goddard* v. *Binney*, 115 Mass. 450 (15 Am. Rep. 112), citing *Spencer* v. *Cone*, 1 Metc. (Mass.) 283, on this proposition.

We conclude that there was testimony to support the findings of fact made by the trial court and that a correct result was reached in the conclusions of law based thereon.

The judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.