(No. 22689.—

A. C. KINGSTON, Commissioner of Banking for the State of Wisconsin, Appellee, *vs.* THE OLD NATIONAL BANK OF CENTRALIA, ILLINOIS, EXR., Appellant.

*Opinion filed December 20, 1934—Rehearing denied Feb. 12, 1935.*

SHAW, J., dissenting.

JUNE C. SMITH, and HUGH V. MURRAY, JR., for appellant.

WHAM & WHAM, for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The appellee (hereinafter called the plaintiff) brought his suit in the circuit court of Marion county against the appellant (hereinafter called the defendant) to collect the superimposed liability of the defendant's decedent as a stockholder of thirty shares of the Merchants Exchange Bank of Door County, Wisconsin, (hereinafter called the bank). Judgment was rendered in favor of the plaintiff,

against the defendant as such executor, for $3000 and costs, from which judgment the defendant has appealed directly to this court.

The plaintiff, Kingston, is the Commissioner of Banking for the State of Wisconsin, and, as such, receiver of the bank. The bank was organized on July 17, 1904, under the laws of Wisconsin and had authority to do a general banking business. It functioned as a bank until October 6, 1932, when under an appropriate resolution and action of its board of directors the plaintiff took possession of the bank for liquidation. The decedent died in October, 1931. On July 2, 1906, he acquired twenty shares, and on July 17, 1914, an additional ten shares, of the capital stock of the bank. All shares were of $100 par value.

The declaration consisted of a special count and the consolidated common counts. The special count stated by apt averments the official capacity of the plaintiff, his duties as such to control and supervise the liquidation of insolvent banks of his State, the organization of the bank, its engagement in the general banking business, its insolvency and the date thereof, that the plaintiff, as such commissioner, took charge of the bank for the purpose of liquidation, the purchase by the decedent in his lifetime and the date of purchase of shares of stock in such bank and his continued ownership thereof until his death, the date of his death, the appointment and qualification of the defendant as such executor, that with other assets of the decedent's estate there came to defendant's possession such shares of stock, that the administration of the estate was still open, and that the estate was solvent and the executor had in its possession assets of the estate in excess of the amount required to pay the defendant's liability and all other claims against the estate, including the expenses of administration. The special count then proceeded to charge that at the time of the purchase of such several shares of stock there was then in full force and effect in the State

of Wisconsin a certain statute hereinafter referred to; that the statute was amended in 1915 by the amendment hereinafter stated, and that the statute as amended has been ever since its enactment, and is yet, in full force and effect; that there was, at and prior to the time the plaintiff took charge of the bank, a certain other statute to which reference is here made later; that under and by virtue of such State statutes as interpreted and construed by the courts of Wisconsin, upon the plaintiff taking charge of the bank the defendant became liable to pay forthwith to the plaintiff a sum equal to the par value of such thirty shares.

The Wisconsin statute as it existed at the time of the purchase of the bank stock was as follows:

"Sec. 39 (later designated as sec. 221.42). *Liability of Stockholders.*—The stockholders of every bank shall be individually liable, equally and ratably, not one for another, for the benefit of creditors of said bank to the amount of their stock at the par value thereof, in addition to the amount invested in said stock. Such liability shall continue for six months after any transfer of stock, as to the affairs of the bank at the time and prior to the date of the transfer. But persons holding stock as executors, administrators, guardians or trustees, and persons holding stock as collateral security, shall not be personally liable as stockholders, but the assets or funds in their hands constituting the trust shall be liable to the same extent as the testator, intestate, ward or person interested in such trust fund would be, if living, or competent to act, and the person pledging such stock shall be deemed the stockholder and liable under this section."

The amendment of 1915 to such section is as follows:

"Such liability shall accrue and become due and payable as to the stockholders of any bank forthwith, upon the Commissioner of Banking taking possession of the property and business of such bank under the provisions of the stat-

utes, and may be enforced by him, in an action brought in his name, in the circuit court of the county in which such bank is located. In the event of the liquidation of such bank, the stockholders who shall have discharged such additional liability shall, after the payment of expenses and the claims of creditors, be entitled to reimbursement on account thereof out of any remaining property of such bank before the same is distributed among its stockholders." Wis. Stat. 1931, p. 1824.

Section 220.04 of the statute so far as pertinent here is as follows:

"Sec. 220.04 (3). When any bank shall be in the hands of the commissioner and an assessment shall be made against the stockholders thereof to enforce payment of the double liability, the commissioner or his duly appointed deputy or agent shall have the right to prosecute an action in a foreign State to enforce such liability against a stockholder residing in such foreign State." Wis. Stat. 1931, pp. 1801, 1802.

A general and special demurrer to the special count was interposed by the defendant. The demurrer was overruled. The defendant abided by his demurrer and was defaulted. The common counts were abandoned. Evidence was heard only as to the amount of damages as to the case made by the special count.

The banking laws of Wisconsin were revised in 1903. Provision was made for a State banking department. The office of Commissioner of Banking was created and section 221.42, *supra,* was adopted. Provision was also made for the enforcement of the stockholder's liability by section 10 of chapter 1 of the Banking act, as follows: "If after the expiration of one year from the closing of any incorporated bank it shall appear to the receiver thereof that the assets of such bank are insufficient to pay its liabilities, it shall be the duty of such receiver to imme-

diately institute proper proceedings, in the name of the bank, for the collection of the liability of the stockholders of such bank; all sums so collected to become a part of the assets of such bank, and to be distributed *pro rata* to the creditors thereof in the same manner as other funds. No action of any creditor against any stockholder of such bank for the recovery of such liability shall be maintained unless it shall appear to the satisfaction of the court that the receiver has failed to commence the action as herein provided." This section was repealed in 1909. The Banking act was at the same time amended by placing the liquidation of banks and the enforcement of stockholders' liability exclusively in the hands of the Commissioner of Banks and abolishing the necessity of a receiver. The act was left without procedure being prescribed for the enforcement of the stockholders' liability until the amendment of 1915.

It is earnestly urged by the defendant that the amendment of 1915 impairs the obligation of contract and does not afford it due process of law. To sustain its contention that the amendment of 1915 violates the inhibitions against the impairment of the obligation of contract as provided by sections 2 and 14 of article 2 of the Illinois constitution the defendant cites *Schwenker* v. *Bekkedal*, 236 N. W. (Wis.) 581. That case was decided in 1931. The question was not raised in that case as to the effect of the amendment on the liability of a stockholder who acquired his stock prior to the 1915 amendment. The court in the course of its opinion did discuss the Wisconsin Banking act of 1903 and followed the rule as applied to the Banking act of 1903 theretofore announced in *Cleveland* v. *Burnham*, 64 Wis. 347, 25 N. W. 407, that in interpreting a bank stockholder's liability under the statute of 1858 in order to fix the liability of the stockholder, and before such liability matured, it was necessary to determine two factors: (1) The whole amount of the par value of all the stock held by all stockholders, and (2) the amount of the

deficit to be paid after exhausting all the assets of the bank, and then apply the rule that each shareholder contribute such sum to such deficit as will bear the same proportion to the whole amount of the deficiency as his stock bears at par value to the whole amount of the capital stock of the bank. The court in the *Schwenker case* further stated in its opinion that the words "equally and ratably, not one for another," were manifestly taken from the National Banking act, and cited *United States* v. *Knox,* 102 U. S. 422, 26 L. ed. 216, in support of the construction of the stockholders' liability. From this statement in the opinion in *Schwenker* v. *Bekkedal, supra,* the defendant argues that the 1903 Wisconsin act fixing the superadded lia· bility of a stockholder in a bank was taken from the National Banking act, and that the liability of the defendant for bank stock purchased by the decedent prior to 1915 is covered by the construction of the National Banking act as declared in the case of *United States* v. *Knox, supra;* that under such construction (1) the decedent's liability to creditors of the bank did not accrue or become fixed until there was a judgment of a court of competent jurisdiction of Wisconsin finding that the assets of the bank were insufficient to pay the debts and fixing the amount of such deficiency; (2) the amount of this deficiency as fixed by the court then became and constituted the liability of the stockholders, for which they would be equally and ratably liable, and not one for another, but not to exceed $100 per share; and (3) that the "equal and ratable liability" was thereby changed to a joint liability by reason of the last sentence of the 1915 amendment.

The *Knox case, supra,* was a petition for a writ of *mandamus* by a creditor of a bank in an effort to compel the comptroller of currency to levy and collect an additional assessment from the stockholders. The stockholders' liability in question in that case was fixed by the National Banking act as amended in 1864, which defined the liability

as "equally and ratably, not one for another." Shortly after the bank's closing the comptroller had directed a stockholders' assessment of seventy per cent and caused the filing of a bill in chancery against the stockholders to enforce the collection thereof. The stockholders of the insolvent bank in that case were directed to pay the seventy per cent assessment, and the cause was thereupon left pending for such additional assessments as might prove to be necessary and proper. Had the entire assessment of seventy per cent been collected in the first instance it would have equaled the deficit between assets and liabilities plus the expenses of liquidation and would have paid the creditors in full. However, because of the inability of many of the stockholders to pay, the proceeds collected from such assessment and realized upon other assets of the bank only permitted the payment of eighty per cent of the debts of the bank. The question there involved, as we construe that case, not only involved the procedure to be followed in the collection or determination of the stockholders' liability, but the meaning of the expression, as used in the National Banking act, pertaining to the stockholders' liability, "equally and ratably, not one for another." The court in the *Knox case* approved the conduct of the comptroller of currency in the first instance in levying only seventy per cent, and it is significant that the levy of the seventy per cent was not delayed in that case until the assets of the bank had been reduced to cash and the exact amount of the liability determined.

If we concede to the defendant all it contends as being held in *United States* v. *Knox, supra, Cleveland* v. *Burnham, supra,* and *Schwenker* v. *Bekkedal, supra,* the force of such decisions did not create a contract for its decedent as a stockholder which could not be substantially changed by a subsequent decision of a court of competent jurisdiction. Contracts are always susceptible to such change of construction as the courts may from time to time pronounce

in their interpretation of their terms and obligations. Such changes are not within the inhibition of the Federal constitution directed against the impairment of the obligation of contract by legislative enactment. *McCoy* v. *Union Elevated Railway Co.* 247 U. S. 354, 62 L. ed. 1156; *Prall* v. *Burckhartt,* 299 Ill. 19; *Thomson* v. *Thomson,* 293 id. 584.

In considering the constitutional questions raised, certain definite rules must guide our course. If the statute attacked as being unconstitutional will bear two constructions, one of which will render it unconstitutional, the other constitutional, it is our duty to adopt the latter construction. (*Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504; *People* v. *Monroe,* 349 id. 270; *People* v. *Board of Education,* 349 id. 390; *El Paso and Northeastern Railroad Co.* v. *Gutierrez,* 215 U. S. 87, 54 L. ed. 106; *United States* v. *Delaware and H. Co.* 213 id. 366, 53 L. ed. 836; *St. Louis Southwestern Railroad Co.* v. *Arkansas,* 235 id. 350, 59 L. ed. 265.) All reasonable minds, we believe, will agree that under the Wisconsin statute of 1903 a stockholder of the bank was liable to the creditors of the bank to the amount of the par value of his stock if such amount was necessary to liquidate the liabilities of the bank. The charter granted the bank under the provisions of the statute constituted a contract between the stockholders and the State. Every stockholder by the acquisition of stock in the bank assented to the contract and became bound by its terms to pay the superadded liability imposed by the statute which by operation of law was read into and became a part of the charter. (*Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. 518, 4 L. ed. 629; *Farrington* v. *Tennessee,* 95 U. S. 679, 24 L. ed. 558.) This liability was a primary one and became fixed at the same time the bank's liability was incurred. The method of enforcement is a matter of procedure within the legislature's control.

The course to be followed and the means to be invoked for the collection of this liability, whether prescribed by

legislative act or court decision, constituted no part of the stockholder's contract to pay his contractual obligation. No person has a vested right in any remedial procedure, but such method may be changed, altered or modified at the legislative will, so long, only, as such change does not impair the obligation of contract. (*People* v. *Cesar,* 349 Ill. 372; *City of Chicago* v. *Industrial Com.* 292 id. 409; *Merlo* v. *Coal and Mining Co.* 258 id. 328; *Fisher* v. *Green,* 142 id. 80; *Sharp* v. *Sharp,* 213 id. 332; *Davidson* v. *Redden,* 214 id. 61; *Terry* v. *Anderson,* 95 U. S. 628, 24 L. ed. 365; *New Orleans, etc. Co.* v. *Louisiana,* 157 id. 219, 39 L. ed. 679; *Oshkosh Waterworks Co.* v. *Oshkosh,* 187 id. 437, 47 L. ed. 249.) A procedure which grants a more speedy remedy for the enforcement of a contract does not impair the obligation of the contract. A particular remedy may be repealed and another substituted therefor. *Chapin* v. *Billings,* 91 Ill. 539; *Newkirk* v. *Chapron,* 17 id. 344; *Smith* v. *Bryan,* 34 id. 364; *Wood* v. *Child,* 20 id. 209; *McCoy* v. *Union Elevated Railway Co.* 274 U. S. 354, 62 L. ed. 1156; *Branchville Motor Co.* v. *Adden,* 155 S. E. (S. C.) 277; *Springhorn* v. *Dirks,* 72 Mont. 121, 231 Pac. 912; *Hanson* v. *Soderburg,* 105 Wash. 255, 177 Pac. 827; *Denny* v. *Kennedy,* 16 S. E. (2d) Ky. 1030; *Bernheimer* v. *Converse,* 206 U. S. 516, 51 L. ed. 1163; *League* v. *Texas,* 84 id. 156, 46 L. ed. 478; *Richmond* v. *Irons,* 121 id. 27, 30 L. ed. 864; *Henley* v. *Myers,* 215 id. 373, 54 L. ed. 240.

The banking business reaches practically all classes of people. It is a business in which the public are vitally interested. It is a commercial pursuit always subject to legislative supervision for the purpose of giving adequate security to depositors. Doubtless the Wisconsin legislature had decided, at the time of the adoption of the 1915 amendment, that the procedure in the past for the realization of the stockholders' liability was too cumbersome and so fraught with delay that the rights of the depositors and

other creditors were not sufficiently safeguarded. It is obvious that by the enactment of the 1915 amendment it was the legislative thought to provide an ample and expeditious procedure for the collection of the stockholders' liability and to liquidate more rapidly the banks' liabilities. When the defendant's testator bought the shares of stock in the bank he purchased them with the liability imposed by statute, subject to the then existing procedural methods concerning the payment of such liability, as well as any future procedure for the enforcement of such liability as the legislature of Wisconsin might impose by statute. The stockholders involved in *Schwenker* v. *Bekkedal, supra,* purchased their bank stock subsequent to 1915. In that case the Supreme Court of Wisconsin also construed the 1915 amendment and held that the stockholder's liability accrues and becomes due immediately upon the banking commissioner taking over the bank; that the commissioner may bring suit forthwith to collect the full par value liability, and that when the bank's affairs are fully liquidated, in the event there is any surplus of the bank's assets, any stockholder over-paying his liability may be reimbursed *pro tanto* to the excess paid. The amendment of 1915 was procedural only. It did not change the stockholder's liability from an equal and ratable liability to a different liability, did not encroach upon any of the contractual rights of the defendant's testator, and did not deprive him of due process of law.

The defendant urges that the procedure prescribed by the Wisconsin statute is a special statutory remedy and that the courts of Illinois will not enforce it. On this branch of the case the defendant cites and relies on *Young* v. *Farwell,* 139 Ill. 326, and *Tuttle* v. *National Bank of Republic,* 161 id. 497. The soundness of the decision in the *Tuttle case* is questioned in *Bell* v. *Farwell,* 176 Ill. 489, where the *Tuttle case* is reviewed and a recovery permitted for a stockholder's liability under the Kansas statute. Attention is there called to the fact, by the opinion in the *Bell*

*case,* that three provisions of the Kansas statute and other allegations with reference to the construction of the statute by the Supreme Court of Kansas were found in the declaration in the *Bell case* which were not before the court in the *Tuttle case,* and that if such allegations and statutory provisions had been so before the court in the *Tuttle case* a different result might have been reached in that case. The *Young case, Tuttle case* and *Bell case* are each reviewed in *Edwards* v. *Schillinger,* 245 Ill. 231, and the reasoning of the *Bell case* followed.

The liability imposed upon a stockholder of a banking corporation under the laws of Wisconsin is statutory as well as contractual. (*Christopher* v. *Norvell,* 201 U. S. 216, 50 L. ed. 732.) The liability here sought to be enforced against the decedent's estate is not in the nature of a penalty but is a statutory and contractual provision imposed by our national laws as to stockholders of national banks, as well as by practically all, if not all, of the States of the Union as to stockholders of State banks. Such liability is known to the public generally, and our legislative bodies, both State and national, have enacted legislation for the purpose of affording security to the depositors of a bank by indemnifying, to the extent of a superadded stockholders' liability, creditors of any banking institution which fails. In our own State, as well as other States, the superimposed liability is written into the constitution. As a general rule it is only where the liability charged is of a penal nature or its enforcement confined by statute to the laws of the State wherein the liability is incurred that the courts of foreign States refuse to enforce such liability. Here the liability is several and independent, with the express provision made by the statute for its collection from non-residents of the State. It is not a special remedy nor a penalty but is a contractual obligation, suits for the collection of which may be maintained in Illinois. *Bell* v. *Farwell, supra; Edwards* v. *Schillinger, supra.*

It is urged that the liability created by the Wisconsin statute upon stockholders of banks did not survive the death of the defendant's testator. The Wisconsin statute is specific in creating the liability against not only the living shareholder but against his estate. The liability imposed by the Wisconsin statute survived the death of the defendant's testator and is enforceable against his executor. *Mortimer* v. *Potter,* 213 Ill. 178.

Lastly, it is earnestly argued that the suit here can only be maintained by means of the doctrine of comity of States. The cases of *Finney* v. *Guy,* 106 Wis. 256, 82 N. W. 595, and *May* v. *Black,* 77 id. 101, 45 N. W. 949, are cited as holding that the courts of Wisconsin have refused to permit a like remedy created by the laws of another State to be enforced in the courts of that State. In the *Finney case* the suit was brought against a resident of Wisconsin by a creditor to enforce his liability as a stockholder in a Minnesota banking corporation. The Wisconsin court held that the Minnesota statute for the enforcing of the liability of stockholders for corporate debts provided a single method of enforcing it by one suit in the State court of Minnesota in favor of all creditors, and against the corporation if it had assets, and against all stockholders. It is obvious that the Minnesota statute prescribed a special remedy against the stockholders of an insolvent banking corporation, and that such remedy was applicable only to stockholders within the jurisdiction of Minnesota courts. The *Finney case* was approved by the United States Supreme Court. (*Finney* v. *Guy,* 189 U. S. 335, 47 L. ed. 839.) The *May case* is considered and reviewed in *Edwards* v. *Schillinger, supra,* and it was there held that the reasons for the Wisconsin court's refusal to take jurisdiction were sound because of the fact that the Michigan corporation there involved must be made a party to the suit to enforce the stockholders' liability, and there was no jurisdiction over the Michigan corporation by the Wisconsin

court. The decisions in *Finney* v. *Guy* and *May* v. *Black* have no application to cases of the character here at bar.

As we view the present case, the right to prosecute the suit here is properly maintainable under the doctrine of comity, but we do not have to depend upon that, as the suit is not a suit under a special statutory proceeding depending upon the doctrine of comity or reciprocity, but is a suit brought to enforce the performance of the contractual obligation assumed by the decedent in his lifetime at the several dates he purchased his shares of stock in the Wisconsin bank. The suit is properly brought in the Illinois court. Ample provision is made by the 1915 amendment for the recovery of any over-payment by the stockholder in the event all of the assessment paid is not required for the liquidation of the bank's liabilities.

We are of the opinion that the judgment of the circuit court is correct, and such judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHAW, dissenting:

Under the original act a stockholder who owned one-tenth of the stock of a bank could be held liable for no more than one-tenth of its debts. Under the act as amended he is required to pay over an amount equal to the full par value of his shares and is not entitled to reimbursement for any part of this sum unless and until all the debts of the bank are paid. This is, in my opinion, a clear impairment of the original contract—a matter of substance and not merely one of procedure.

To state a good cause of action in this case for the full amount recovered it would have been necessary to allege that the defendant's *pro rata* share of the debts of the bank equaled or exceeded the par value of his stock. There was no such allegation, and in its absence the demurrer should have been sustained.