[No. 27544. Department One. December 4, 1939.]

DONALD BICKNELL, *as Receiver, Appellant,* v. JESSIE RING GARRETT *et al., Respondents.*[1]

*Bausman, Oldham, Jarvis & Wampold,* for appellant.

*Jones & Bronson* and *George Kinnear,* for respondents.

ROBINSON, J.—This is a superadded liability action brought by the receiver of an insolvent Michigan bank, hereinafter called the bank, against the defendants, Jessie Ring Garrett and her husband. Relief, however, is sought against Mrs. Garrett only, as the owner of fifty shares of the stock of the bank, and she will be referred to throughout as the defendant or respondent.

The assessment was made on September 5, 1934, and the suit was commenced in October, 1937, more than

[1]Reported in 96 P. (2d) 592.

three, but less than six, years thereafter. The defendant relied upon the statute of limitations as a defense to the action. The facts are stipulated and, as they relate to the acquisition of the fifty shares of stock by the defendant, are as follows:

In June, 1907, Clark Ring, father of the defendant, transferred twenty-five shares of the bank stock to Jessie Ring (who is now Jessie Ring Garrett and the defendant here), for which a stock certificate was issued and a receipt therefor given.

On November 6, 1911, Jessie Ring, having married Garrett, signed a written assignment whereby the shares were transferred to the name of Jessie Ring Garrett. A new certificate was thereupon issued by the bank for the twenty-five shares in the name of Jessie Ring Garrett, for which a receipt was given.

The certificates referred to were all on standard stock certificate forms. The receipts vary slightly, but are all substantially in the following form: "Received of Bank of Saginaw Certificate No. .............................., representing ........................... shares of the capital stock of said Bank. ................................................................................ Signature."

In 1920, the bank increased its capitalization and issued two shares for each share held. Defendant thereby was entitled to an additional twenty-five shares of stock, and the bank thereupon issued to her a new certificate representing fifty shares, for which the defendant gave a signed receipt to the bank.

In 1928, the bank again increased its capitalization, and each shareholder was given the privilege of purchasing one share for each four held. Defendant, by written instrument, on May 12, 1928, applied for the additional thirteen shares to which she was thereby entitled, thereafter sent a check to the bank in payment of the thirteen shares, and asked that a certificate be issued therefor. The bank thereupon issued to

her a certificate covering the thirteen shares, for which she gave a signed receipt.

After the issuance of this certificate for thirteen shares, the defendant thus held two certificates, one for fifty shares and the other for thirteen shares. Subsequently, a new certificate was issued by the bank to the defendant covering her entire stock ownership of sixty-three shares, for which she gave a signed receipt to the bank.

Subsequently, in October, 1929, defendant sold the thirteen shares which she last acquired in 1928, thus leaving her the owner of fifty shares. The bank thereupon issued to her a new certificate covering her fifty shares, for which she gave to the bank a signed receipt. This stock certificate for the fifty shares is in the possession of the defendant and represents the stock ownership on which the suit is based.

At the opening of their brief, appellant's attorneys accurately state the question presented by the appeal as follows:

"In this case, wherein more than three but less than six years have expired from the date of a superadded liability assessment against an insolvent bank's stockholder (the defendant), the question presented is whether the six year statute is applicable to a suit upon such liability."

In *Bennett v. Thorne*, 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113, the court stated that the six-year statute was applicable to such an action. That holding, however, as appellant frankly points out, was not necessary to the decision of the case. Before a similar question arose in this court, and, in fact, within less than three months after the announcement of the decision in *Bennett v. Thorne*, the supreme court of the United States handed down the decision in *McClaine v. Rankin*, 197 U. S. 154, 49 L. Ed. 702, 25 S. Ct. 410. This case arose out of the failure, in 1895, of the First National

Bank of South Bend, Washington. The assessment upon which the action was based was made on August 17, 1896. Aldrich, the then receiver, later succeeded by Rankin, began the action in the circuit court of the United States for the western district of Washington on August 15, 1899, less than three, but more than two, years after it accrued. The court upheld defendant's contention that the liability sued upon was not contractual, but a liability created by statute, and, therefore, subject to the two-year limitation imposed by Ballinger's Code, § 4805, now Rem. Rev. Stat., § 165 [P. C. § 8172]. *Aldrich v. McClaine,* 98 Fed. 378. On appeal, however, the circuit court of appeals held that the liability was contractual and governed by the limitation provided in subd. 3, § 4800, Ballinger's Code, now Rem. Rev. Stat., § 159 [P. C. § 8166]. The subdivision reads as follows:

"Within three years: . . .
"3. An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument; . . . "

When the matter reached the supreme court of the United States, it held that the liability was not contractual, but one created by statute, and, after discussing our limitation statutes and the cases construing them, held that the two-year statute was applicable.

The question again came before this court in *Bates v. Cooley,* 187 Wash. 489, 60 P. (2d) 23. In that case, a receiver of an insolvent Iowa bank sued a resident of Washington, the action being brought within three years, but more than two years, after it accrued. Upon appeal, as we have determined by examining the briefs, the defendant-appellant contended that the limitation period was two years, relying strongly upon the decision of the supreme court of the United States in *McClaine v. Rankin,* and other decisions which have

followed it. The plaintiff-respondent, while citing *Bennett v. Thorne,* did not contend that the six-year statute applied, but insisted upon the application of the three-year statute. We quote from the decision:

"Appellant's second contention is that the action in this state was not commenced within the time prescribed by the statute of limitations. The answer to this contention depends upon the nature of a stockholder's liability for an assessment upon his stock as directed by the statute. While the remedy is controlled by the law of the forum, the nature of the right for which the remedy is sought is controlled by the laws of the state wherein the right accrues.

"It is the settled law of Iowa that the double liability of stockholders under constitutional and statutory provisions is contractual in its nature. [Citing five such cases.]

"The liability being a contractual one, the applicable statute of limitations is Rem. Rev. Stat., § 159 [P. C. § 8166], which prescribes a three-year limitation. This action was brought within that period."

The appellant urges that the last of the three paragraphs above quoted is dictum, because, in order to arrive at the decision, it was only necessary for the court to hold that the two-year statute did not apply. It is at least fair to say that the contest between the parties in the case was wholly concerning whether the two or three-year statute applied, and that the possible applicability of the six-year statute was not urged upon the court. The decision cannot be rightly regarded as being contra to either *Bennett v. Thorne* or *McClaine v. Rankin,* because the result is made to turn on the nature of the right to be enforced, as indicated by the place of its origin. In *Bennett v. Thorne,* the right sought to be enforced was created by § 11, Art. XII of the constitution of Washington. In *McClaine v. Rankin,* the right sought to be enforced was created by a Federal statute. In *Bates v. Cooley,* the

right was created by the law of Iowa. Obviously, these rights could well be different in nature.

The case of *Bates v. Cooley* is clearly authoritative, in that it establishes a method of approach to the question presented, and requires us, as the first step in the inquiry, to examine the statutes and decisions of the state of Michigan, in which state the liability sought to be enforced in the instant case accrued, in order to determine its nature. It is stipulated that the liability was imposed by § 48, Act. No. 66, Public Acts of Michigan, 1929. This section reads, in part:

"The stockholders of every bank shall be individually liable, equally and ratably, and not one for another, to satisfy the obligations of said bank to the amount of their stock at the par value thereof, in addition to the said stock; . . . "

This, as is said by the supreme court of Michigan in *Fors v. Farrell*, 271 Mich. 358, 260 N. W. 886, "does not differ materially from the corresponding portion of the National banking law," and the reasoning of the supreme court of Michigan respecting the nature of the liability follows the Federal decisions. This is particularly apparent in the comparatively recent opinions of that court in *Lawrence v. DeBoer*, 273 Mich. 172, 262 N. W. 660, and the case of *Fors v. Thoman*, 267 Mich. 148, 255 N. W. 297. Both of these decisions are based upon *Christopher v. Norvell*, 201 U. S. 216, 50 L. Ed. 732, 26 S. Ct. 502, which states the Federal rule as follows:

"Her liability for the debts of the bank is created by the statute, although in a limited sense there is an element of contract in her having become a shareholder."

In *Fors v. Thoman*, the supreme court of Michigan said:

"The liability of a stockholder in a bank is imposed by the statute. It was created for the protection of

the creditors of the bank. Although in a limited sense there is an element of contract when one becomes a stockholder, the liability for an assessment is based on the provisions of the statute."

See, also, *Simons v. Groesbeck,* 268 Mich. 495, 256 N. W. 496, where it is said that the obligation is "contractual in its nature."

We conclude, from an examination of the foregoing Michigan cases, and others not cited, that the nature of the superadded liability created by the Michigan statute is the same as that of the liability created by the national banking act. One of the latest and most authoritative statements as to the nature of that liability was made in *Brown v. O'Keefe,* 300 U. S. 598, 81 L. Ed. 827, 57 S. Ct. 543:

"True indeed it is that the liability is created by a statute, and not solely by agreement. *McClaine v. Rankin,* 197 U. S. 154, 159, 161; *Christopher v. Norvell,* 201 U. S. 216, 225, 226. No disclaimer by the stockholder would be effective to avoid it. *Even so, the liability, created though it is by statute, is quasi-contractual in its origin and basis."* (Italics ours.)

"Quasi" means "as if, almost" (Bouvier), and quasi-contracts are not contracts at all. They do not rest upon consent. They are obligations created by legal fiction in order to do justice: Restatement Law of Contracts, § 5, Comment (a); Keener on Quasi-Contracts, chapter 1; Bouvier's Law Dictionary "Quasi-Contracts"; and, although the Michigan decisions do not describe the liability as being "quasi-contractual," they speak of it as contractual "in a limited sense," and say there is "an element of contract" in it and as being "contractual in its nature." But this is a far cry from holding that the liability arises out of a written agreement.

Our statute (Rem. Rev. Stat., § 157 [P. C. § 8162]) provides the following limitation:

"Within six years: . . .

"2. An action upon a contract in writing, or liability express or implied arising out of a written agreement. . . ."

We are inclined to the opinion that this statute does not contemplate quasi-contracts or liabilities merely contractual in nature, but liabilities which are either expressly stated in a written agreement or which follow by natural and reasonable implication from the promissory language of the agreement, as distinguished from liabilities created by fictional processes of the law or imported into the agreement from some external source. But if we are mistaken in this view, there are other considerations which lead to the same result.

If the obligation arises out of a written contract, what and where is the contract? Those cases which hold that the obligation arises out of a written contract are not in agreement as to where the contract is to be found. For example, in *Kingston v. Old Nat. Bank of Centralia,* 359 Ill. 192, 194 N. E. 213, it is held that the contract is found in the charter:

"The charter granted the bank under the provisions of the statute constituted a contract between the stockholders and the State. Every stockholder by the acquisition of stock in the bank assented to the contract and became bound by its terms to pay the superadded liability imposed by the statute which by operation of law was read into and became a part of the charter. (*Trustees of Dartmouth College v. Woodward,* 4 Wheat. 518, 4 L. ed. 629; *Farrington v. Tennessee,* 95 U. S. 679, 24 L. ed. 558.)"

Other courts have held that it is read into, and becomes a part of, the stock subscription contract. It will be noted in each instance that the liability is *read into* the alleged written contract and not implied from anything of a promissory nature appearing in the writing. Such a process is, of course, absolutely necessary in

order to hold that the liability arises out of a written contract in a case where the defendant purchased his stock before the superadded liability statute was passed. In such a case, there can be no pretense that the stockholder promised and agreed.

The appellant in this case acknowledges the difficulty, or rather the impossibility, of pointing out the written instrument on which he sues, but, with relation to that matter, says, in his brief:

"We do not rest our case upon the proposition that any particular instrument represents the contract, but we do say that this obligation arises out of a written instrument of some sort rather than out of any oral understanding."

And, in another place in the brief, he further says:

"We do not believe it is even necessary in this case for the court to state which agreement is the basis of the liability; it is enough that the instrument which furnishes the basis for the liability is in writing whether it be the stock certificate, charter or otherwise."

We cannot agree. In our opinion, under the circumstances shown in this case, it was quite as necessary for the plaintiff to produce the contract as it would have been had the action been upon an agreement to pay the debt of another and the defendant had pleaded the statute of frauds.

It is admitted that this suit was brought against Mrs. Garrett more than three years after the cause of action arose. She pleaded that it was not brought within the time limited by law. It is further admitted that that plea is good, unless the suit is upon a liability "express or implied arising out of a written agreement." The courts of the state where the liability arose have said that it is "contractual in its nature," but, in so far as we are advised, and a thorough search

has been made of the decisions, they have not said that it is a true contract, or that it arises out of a written agreement. Whether or not it arises out of a written agreement, we must, therefore, determine for ourselves.

It is obvious that we cannot find that it is an express liability arising out of a written agreement, unless we can see or know the contents of the agreement. It is equally obvious that we cannot hold that the liability sued upon is an implied liability arising out of a written agreement, unless the agreement relied upon is produced so that we may determine whether its language warrants the implication. The action, therefore, must fail.

The judgment appealed from is affirmed.

MAIN, STEINERT, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—Although the recovery sought by plaintiff is upon an obligation imposed by statute, it is an obligation incident to ownership of the stock—incident to defendant's status as a stockholder. That status is established wholly and solely by the stock certificate. The liability of defendant would never exist but for her acceptance of the stock certificate. To my mind, it constitutes a "written agreement" in contemplation of Rem. Rev. Stat., § 157 [P. C. § 8162], out of which her liability arises. *Kingston v. Old Nat. Bank of Centralia,* 359 Ill. 192, 194 N. E. 213.

I dissent.